UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JENNIFER E. PRATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:08-CV-165 |
| v. | ) | |
| | ) | *Mattice / Lee* |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This action was instituted by the Plaintiff pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying the Plaintiff a period of disability, disability insurance

benefits ("DIB"), and supplemental security income ("SSI") under Title II and Title XVI of the

Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382. This matter was referred to the

undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure

for a report and recommendation regarding the disposition of Plaintiff's motion for summary

judgment [Doc. 7] and Defendant's motion for summary judgment [Doc. 18].

For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for summary

judgment [Doc. 7] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 18] be

**GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be

**DISMISSED**.

## Administrative Proceedings

Plaintiff filed applications for DIB and SSI on December 10, 2003, alleging she became

disabled on April 20, 2003 (Tr. 49-52, 75, 342-45). After her applications were denied initially and

upon reconsideration (Tr. 30-33, 346-53), Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 41). Following an administrative hearing on July 12, 2005 (Tr. 356-66), the ALJ issued a decision on January 31, 2006 (Tr. 13-22), finding Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work as a receptionist (Tr. 22). On December 26, 2007, the Appeals Council remanded the case to the ALJ for a new hearing because the tape recording of the administrative hearing had been lost (Tr. 45-48). The Appeals Council vacated its remand order on February 20, 2008, because the tape recording of the hearing had been found (Tr. 8-10). The decision of the ALJ became the final decision of the Commissioner on April 9, 2008, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5-7).

## Standard of Review

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because

substantial evidence exists in the record to support a different conclusion. The substantial evidence

standard allows considerable latitude to administrative decisionmakers because it presupposes there

is a zone of choice within which the decisionmakers can go either way, without interference by the

courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535,

548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir.

1986). The Court may consider any evidence in the record, regardless of whether it has been cited

by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of

Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d

at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit recently reiterated the five-step procedure used by the Social Security

Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain
> claimants who, by virtue of a medically determinable physical or
> mental impairment of at least a year's expected duration, cannot
> engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A).
> Such claimants qualify as "disabled." *Id.* A claimant qualifies as
> disabled if she cannot, in light of her age, education, and work
> experience, "engage in any other kind of substantial gainful work
> which exists in the national economy." *Id.* § 423(d)(2)(A). To
> identify claimants who satisfy this definition of disability, the SSA
> uses a five-step "sequential evaluation process." 20 C.F.R §
> 404.1520(a)(4). The five steps are as follows:
>
> In step one, the SSA identifies claimants who "are doing substantial
> gainful activity" and concludes that these claimants are not disabled.
> *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step
> two considers the "medical severity" of claimants' impairments,
> particularly whether such impairments have lasted or will last for at
> least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with

3

impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.

At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

## ALJ's Findings

The ALJ made the following findings in support of Commissioner's decision, which are conclusive if they are supported by substantial evidence in the record:

4

1.      The claimant met the disability insured status requirements of the Act on April 20, 2003, the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.

2.      The claimant has not engaged in substantial gainful activity since April 20, 2003.

3.      The medical evidence establishes that the claimant has severe lumbar spine impairment, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.      The claimant's testimony of impairments, limitations, and pain, of such severity to preclude her from engaging in the full range of medium work is not credible, and is not supported by the totality of the evidence.

5.      The claimant has the residual functional capacity to perform work-related activities except for work involving more than the full range of medium work . . . .

6.      The claimant's past relevant work as a receptionist did not require the performance of work-related activities precluded by the above limitation(s) . . . .

7.      The claimant's impairment does not prevent the claimant from performing her past relevant work.

8.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision . . . .

(Tr. 21-22).

## Issues

The issue presented by Plaintiff is:

Whether the decision of the Commissioner that Plaintiff was not under a disability is supported by substantial evidence.

[Doc. 8 at 1].

5

**Review of Evidence**

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff was 37 years old at the time of the ALJ's decision. She had a high school general equivalency degree and past relevant work as a receptionist, bartender, child care provider, care giver, telemarketing receptionist and retail clerk (Tr. 92-99).

*Medical Evidence*

Only the most pertinent information will be briefly mentioned herein as it is not necessary to summarize all of the medical evidence, most of which is not in dispute. Whether or not the medical evidence is summarized herein, however, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

A treatment note from Kathy Finley, F.N.P., dated January 8, 2004, stated J. Aaronson, D.O. had determined Plaintiff was disabled and Ms. Finley concurred (Tr. 132). Bradley Johnson M.D. interpreted an MRI of Plaintiff's lumbar spine taken on January 30, 2004, as showing an early degenerative change of the L5-S1 disc, without significant disc protrusion or neural encroachment, but otherwise negative (Tr. 169). A treatment note from Dr. Aaronson dated April 15, 2004 prepared for an insurance company stated Plaintiff had developed a mechanical back pain syndrome from her lumbrosacral strain and that Dr. Aaronson had declared Plaintiff medically stationary approximately two weeks earlier (Tr. 124).

Art Stair, M.A., under the supervision of Charlton S. Stanley, M.D., performed a psychological evaluation for the state agency on August 4, 2004 (Tr. 193-199). Plaintiff drove herself to the evaluation, although she reported she cannot drive when she takes her pain medication

(Tr. 193). Plaintiff reported she felt useless, did not feel good about herself, and preferred to be alone (Tr. 194). According to the notes, Plaintiff was well oriented to time and place, could think abstractly, her thinking was well-organized, she did not have a problem maintaining a coherent train of thought, and she reported a moderate degree of anxiety and depression (Tr. 196-97). Dr. Stanley's/Mr. Stair's diagnosis was: major depressive disorder, without interepisode recovery, moderate (provisional), rule out somatoform disorder; mild borderline personality features; current global assessment of functioning ("GAF") of 50 (Tr. 198).

Frank Kupstas, Ph. D. completed a psychiatric review technique form ("PRTF") on August 12, 2004 (Tr. 200-213). Dr. Kupstas based his PRTF on listing 12.04 – affective disorders and 12.08 – personality disorders (Tr. 200). With regard to listings 12.04 and 12.08, Dr. Kupstas indicated Plaintiff had a medically determinable impairment that did not satisfy the "A" criteria of either listing (Tr. 203, 207). With regard to the "B" criteria of the listings, Dr. Kupstas indicated Plaintiff had a mild restriction of activities of daily living; moderate difficulties in social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration (Tr. 210). With regard to the "C" criteria of listing 12.04, Dr. Kupstas indicated there was no evidence such criteria was met (Tr. 211).

Dr. Kupstas also completed an assessment of Plaintiff's mental RFC on August 12, 2004 (Tr. 214-16). He indicated Plaintiff was moderately limited in the ability: to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances; to interact appropriately with the general public; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

number and length of rest periods (Tr. 214-15). Dr. Kupstas indicated Plaintiff was not significantly limited in all other areas of her mental functioning (*id.*).

Dr. Leeland Cleveland, M.D. completed an assessment of Plaintiff's RFC on February 10, 2005 (Tr. 219-20). Dr. Cleveland indicated Plaintiff could lift and/or carry a maximum of two pounds frequently, could stand and/or walk for about one-quarter of an hour without alternating to a sitting position during an eight-hour workday and could sit for about one-half hour at a time (Tr. 219). Dr. Cleveland indicated Plaintiff should never perform postural activities and her ability to reach, handle and push and/or pull were affected by her impairment (Tr. 220). Dr. Cleveland also indicated Plaintiff should not work around heights or moving machinery because of her impairment (*id.*). Dr. Cleveland also indicated that due to the restrictions caused by her impairment, Plaintiff was totally disabled (*id.*).

Plaintiff was examined by Karl Konrad, Ph. D., M.D. on August 11, 2005 (Tr. 328-30). Plaintiff had a full range of motion of all joints (Tr. 329). She had a cane, but walked without it with a slight limp of the left leg (*id.*). Plaintiff had a limited range of motion of the lumbar spine and straight leg raising in the supine position on the left caused low back and left leg pain (Tr. 330). Dr. Konrad's impression was: (1) obesity and (2) limited range of motion of lumbar spine with normal x-rays (Tr. 330).

Dr. Konrad completed an assessment of Plaintiff's RFC on August 11, 2005 (Tr. 331-33). He indicated Plaintiff's ability to lift and/or carry, stand and/or walk, and sit were unaffected by her impairment (Tr. 331-32). He also indicated Plaintiff could occasionally perform postural activities, such as climbing, stooping, kneeling, balancing, crouching or crawling (*id.*).

Steven Lawhon, Psy. D. performed a consulting psychological evaluation of Plaintiff for the

8

state agency on August 17, 2005 (Tr. 334-38). Dr. Lawhon indicated Plaintiff's test results were valid except for the Minnesota Multiphasic Personality Inventory ("MMPI") (Tr. 337). Dr. Lawhon indicated the MMPI was invalid and that Plaintiff was administered the Test of Memory Malingering ("TOMM") and her scores on the TOMM were below the cutoff for malingering and increased the probability that Plaintiff was exaggerating her problems and/or malingering (*id.*). Dr. Lawhon's diagnosis was major depression recurrent (in partial remission) due to medical reasons; borderline personality traits; present GAF of 60, past GAF of 70 (Tr. 337-38). Dr. Lawhon indicated Plaintiff's ability to understand and remember was not significantly limited; her ability to sustain concentration and persistence was mildly limited; her work adaptation was mildly limited and her social interaction was not significantly limited (Tr. 338). Dr. Lawhon also noted Plaintiff appeared mildly to moderately depressed and, although some decrease in depression was noted, there was some evidence of possible malingering (*id.*).

An evaluation by the Speech, Hearing & Learning Center, Inc. dated May 25, 1993, also appears in the record (Tr. 278-83). The report indicates Plaintiff has a severe discrepancy between her overall intellectual ability and her ability in written expression - dictation caused by an underlying severe visual perception processing problem (Tr. 280).

***Hearing Testimony***

It is not necessary to summarize all of the hearing testimony, however, all of the testimony has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

Plaintiff testified as follows: Plaintiff has not worked since September 2003 (Tr. 358). She hurt her back on April 20, 2003, when she was working as a nursing assistant and was lifting a 300

9

pound patient (Tr. 359). Since her injury, she has experienced back pain as well as trouble sitting, standing and walking (Tr. 360). She takes medication to control the pain and experiences side effects from her pain medication; namely, she is tired and gets "loopy"(*id.*). Plaintiff stated her lower back pain is constant, but does not radiate into her legs (Tr. 364-65). Plaintiff has been prescribed a cane because she has a problem with her knee (*id.*).

Plaintiff tried working in customer service as a receptionist, but stated she was unsuccessful because of her learning disabilities. She stated there is some sort of glitch between what she sees and what her brain processes and she is also unable to concentrate (Tr. 362). She stated her employers were not satisfied with her work (Tr. 363). At the conclusion of the hearing, the ALJ asked Plaintiff to submit her school records (Tr. 365), which appear in the administrative record (Tr. 307-25, 327).

## Analysis

Plaintiff asserts the decision of the Commissioner that she is not disabled is not supported by substantial evidence. She specifically asserts the ALJ's physical RFC determination – that she retains the RFC to perform the full range of medium work – is not supported by substantial evidence [Doc. 8, at 13-15]. Plaintiff contends the ALJ's decision does not explain how the medical evidence support his conclusions as to her RFC and that the ALJ "played doctor" in reaching his decision [*id.* at 9]. Plaintiff also contends the ALJ ignored her testimony concerning her learning disabilities and failed to consider the evidence from the Speech, Hearing & Learning Center [*id.*]. Plaintiff also asserts the ALJ's determination that she does not suffer from a severe mental impairment and has no mental limitations is based upon the ALJ's improper rejection or disregard of every medical opinion of record [*id.* at 9-12].

10

As pertinent with regard to his findings as to Plaintiff's physical and mental impairments, the ALJ stated:

> I find that the opinions and assessments of the state agency medical consultants and psychologists are not supported by the objective medical evidence which was before them. Specifically, the record reveals that the claimant has a severe back impairment, but she does not have a severe mental impairment. In addition, I have significant, probative evidence which was not before those sources.
> . . .
> The claimant has been seen at Family Physicians of Johnson City and by Dr. Leeland Cleveland. These records reveal some tenderness and allegations of back pain, but otherwise reveal a dearth of objective medical evidence to confirm severe impairment. The claimant has consistently been described as in no apparent distress, alert, and oriented. No abnormalities of mood, affect, and memory were reported. These records do not reveal evidence of deep tendon reflex deficit, sensory deficit, atrophy, muscle wasting, or muscle spasm. Further, these records do not reveal any objective observations of severe mental impairment. Dr. Leeland Cleveland completed an assessment of the claimant's ability to perform work-related physical activities on February 10, 2005. Dr. Cleveland reported that the claimant has radiculitis, but the actual office notes to [sic] not reveal any objective proof of radiculitis. Dr. Cleveland's actual physical examinations do not reveal any problems with the claimants [sic] hands performing any manipulation, especially and [sic] regard to pushing/pulling. His actual office notes to [sic] not support his statement that the patient had to sit, stand, walk and move about every 30 minutes. Dr. Cleveland's records do not reveal that the claimant has had any problems with balance. Dr. Cleveland's office notes and records do not reveal any adverse side effects from prescribed medications. Dr. Cleveland's office notes and records do not support his assessment. Consequently, I find the assessment from Dr. Cleveland if [sic] no probative value.
> . . .
> The claimant underwent a psychological evaluation by Charlton Stanley, Ph. D., on August 4, 2004. The claimant limped and used a cane. Affect was somewhat dysphoric throughout the interview. Otherwise, the claimant had good hygiene and grooming. The claimant was well oriented. The claimant demonstrated the ability to think abstractly. . . . In addition, the claimant was assessed as being moderately impaired in her ability to maintain persistence and concentration on tasks for a full work day and work week. I

specifically find that the diagnoses and the assessment that the claimant is moderately impaired are not supported by the objective observations. In regard to mental status, the only abnormality reported was that the claimant's affect was somewhat dysphoric throughout the interview. Otherwise, all objective mental status observations were unremarkable. Consequently, I find the diagnoses and assessment to be of no probative value, and unsupported by objective medical evidence. However, I do find the essentially unremarkable objective observations to be of significant probative value, and I find that the objective mental status observations do not demonstrate a severe mental impairment.

. . .

The claimant was consultatively examined by Dr. Karl Konrad on August 11, 2005. On physical examination, range of motion in the back was reduced and straight leg raising in the supine position on the left caused low back and posterior left leg pain. The claimant moved from sitting to lying, and back again, by partially levering herself both ways. Although the claimant had a cane, she walked without it with only a slight limp. Otherwise, the claimant had a full range of motion in all joints with no tenderness, heat, swelling, or deformity in any joint. Examination of the back revealed no kyphosis, no scoliosis, and normal lumbar flexure. There was no tenderness of the back, and no muscle spasm. Straight leg raises were negative sitting. The claimant was able to rise from a chair and get on and off the examination table without problems. The claimant had a full grip with normal dexterity. The claimant retained full strength at 5/5 in the upper extremities, lower extremities, and grip. There was no asymmetrical muscle wasting. The claimant was able to bear weight on each leg separately. Reflexes were normal. There was no sensory deficit or peripheral neuropathy. Mental status examination was unremarkable. X-rays of the right knee were normal. X-rays of the lumbar spine were normal. In an assessment of the claimant's ability to perform work-related physical activities, Dr. Konrad placed no limitations on the claimant other than occasionally climbing, stooping, kneeling, balancing, crouching, and crawling.

The claimant underwent psychological evaluation by Steven Lawhon, Psy. D. on August 17, 2005. . . . I especially note that psychological testing revealed symptom magnification and malingering. Administration of the MMPI was invalid by both clinical and validity scales. Administration of the Test of Memory Malingering was below the cut off for malingering and increased the probability that the claimant might be exaggerating her problems and/or malingering.

12

In reviewing Dr. Lawhon's objective mental status observations, I note that the only abnormal observation was that the claimant's mood and affect appeared anxious and depressed. The rest of the mental status examination was unremarkable. In addition, two objective psychological tests revealed exaggeration and/or malingering. Therefore, I find Dr. Lawhon's diagnoses and assessment that the claimant has any mental limitations are not supported by his own objective observations and objective psychological testing, or the rest of the objective medical evidence of record, and are no [sic] probative value. However, Dr. Lawhon's unremarkable objective observations and psychological testing revealing exaggeration and/or malingering are of significant probative value, and do not reveal a severe mental impairment.

In evaluating the claimant's testimony regarding the extent of her impairments, limitations, and pain, I have considered the objective medical evidence of record, inconsistencies, and my observations of the claimant at the hearing. Observed at the hearing, the claimant's communicative skills were adequate and appropriate. There was no indication of a loss of concentration or memory. There was no indication of a severe mental impairment.

The objective medical evidence of record does not reveal a severe mental impairment. Only three observations indicative of mental impairment are reported. On April 30, 2003, the claimant was described as anxious, but she was also described as pleasant, alert and oriented. Dr. Stanley only reported that the claimant's affect was somewhat dysphoric. Otherwise, Dr. Stanley's objective observations were unremarkable. Dr. Lawhon only reported that affect and mood were anxious and depressed. Otherwise, no abnormalities were reported. I especially note that the claimant's primary treating source, Dr. Cleveland, does not report any mental status abnormalities. In addition, I especially note that two objective psychological tests revealed symptom exaggeration and/or malingering. Therefore, I find that the objective medical evidence of record does not demonstrate a medically determinable mental impairment.

Physical examinations have revealed abnormalities in regard to the claimant's back including some pain, spasms, tenderness, reduced range of motion, a slight limp, pain with straight leg raising on the left in the supine position, and some problems maneuvering. Otherwise, I note that the claimant was frequently described as in no apparent distress, and she has consistently been described as alert and

13

oriented. Dr. Cleveland, the claimant's primary treating source, has consistently described the claimant as in no apparent distress, alert and oriented. There is no evidence of deep tendon reflex deficit, sensory deficit, atrophy, muscle wasting, or motor loss. I note that multiple objective diagnostic studies have been essentially unremarkable. Multiple x-rays of the lumbar spine have been normal. MRI's of the lumbar spine have revealed only early degenerative change and mild facet osteoarthritis without significant disc protrusion or neural encroachment. There is no evidence of stenosis or impingement. X-rays of the right knee were normal. I especially note that two objective psychological tests revealed symptom exaggeration and/or malingering which are significantly adverse to the claimant's testimony regarding her back impairment, limitations, and pain.

The medical record does not confirm the claimant's testimony of adverse side effects from prescribed medications. The claimant alleged disability beginning on April 20, 2003, but on July 21, 2003, the claimant had been scrubbing bathroom floors at home. The record reveals that the claimant's memory and concentration have been good. The claimant testified at the hearing that she had not driven since January or February 2005, and that her husband did all the driving, but on August 17, 2005, the claimant drove herself to the psychological evaluati [sic] impairments on [sic]. The record does not reveal another severe impairment, physical or mental, by objective medical evidence. Therefore, I find the claimant's testimony regarding the reduction of her daily activities and the location, duration, frequency, intensity, and precipitating or aggravating factors of such severity to preclude her from engaging in the full range of medium work is not credible, and is not supported by the totality of the evidence.
. . .
As a result of her lumbar spine impairment, the claimant retains the residual functional capacity to perform the full range of medium work. I specifically find that the claimant does not have another impairment or combination of impairments, including mental impairment or pain, which would further reduce her residual functional capacity. The claimant's past relevant work as a receptionist does not exceed the claimant's residual functional capacity to perform medium work activities. After assessing the claimant's remaining capacity for work and the physical and mental demands of the work she has done a [sic] past, I find that the claimant retains the residual functional capacity to perform her past relevant work as a receptionist.

14

(Tr. 16, 18-21) (citations to the administrative record omitted).

***Medical Source Opinions***

Applicable regulations state the Commissioner will evaluate every medical opinion and will consider the following factors in deciding what weight to give each opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. §§ 404.1527(d), 416.927(d). Although a treating physician's opinion typically is entitled to substantial deference, as argued by Plaintiff, the ALJ is not bound by that opinion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The Sixth Circuit has consistently stated the treating source's opinion is entitled to deference only if it is based on objective medical findings, *see, e.g.*, *Warner*, 375 F.3d at 390; *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993), *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985), and not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987).

If the treating source's opinion is not given controlling weight, its weight is determined by the same factors that are considered in evaluating every medical opinion. It is well-settled law in the Sixth Circuit that if an ALJ does not accord controlling weight to the opinion of a claimant's treating source, the ALJ must apply certain factors in determining what weight to give the opinion. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)). Pursuant to the regulations, the ALJ:

> is to consider (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.* (quoting 20 C.F.R. § 404.1527(d)).

The ALJ must weigh the opinions of the acceptable medical sources, including the opinions of the treating physicians and the state agency medical sources, as required by applicable regulations, and resolve inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i); *Mullins v. Sec'y of Health & Human Servs.*, 836 F.2d 980, 984 (6th Cir. 1987) ("Claimant's argument rests solely on the weight to be given opposing medical opinions, which is clearly not a basis for our setting aside the ALJ's factual findings."). With respect to weighing the opinions, the Sixth Circuit has held the opinion of a treating physician generally is entitled to greater weight than the contrary opinion of a consulting physician who has examined the claimant on only a single occasion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997); *Hardaway*, 823 F.2d at 927. An ALJ may, however, discount a treating physician's opinion based on an opinion of an examining or a reviewing physician in appropriate circumstances. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). The responsibility for weighing the record evidence, including conflicting physicians' opinions, and resolving the conflicts rests with the ALJ. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

In addition, the ALJ must give good reasons for the weight given a treating source's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 461 (6th Cir. 2005); 20 C.F.R. § 404.1527(d)(2)). This reason-giving requirement is "clearly procedural ensuring 'that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting *Wilson*, 378 F.3d at 544). The reason-giving requirement in § 404.1527(d)(2) "exists, in part, for claimants to understand why the

16

administrative bureaucracy deems them not disabled when physicians are telling them that they are."

*Id.* In the Sixth Circuit:

> [b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions, denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

Contrary to Plaintiff's assertions, the ALJ applied the correct legal standard to weigh the opinions of the acceptable medical sources, as required by applicable regulations, and appropriately resolved inconsistencies between the acceptable sources. *See* 20 C.F.R. §§ 404.1527(d)(4), (f)(2)(i) and 416.927(d)(4), (f)(2)(i). Although the Plaintiff asserts the ALJ "has ignored or improperly rejected every medical opinion of record in regard to [her] work related limitations," [Doc. 8 at 16], in his decision the ALJ thoroughly discussed all the evidence of record, particularly, the medical source opinions and clearly did not simply ignore the opinions. With respect to the opinion of Dr. Cleveland, who the ALJ recognized was a treating physician and Plaintiff's primary doctor, the ALJ reasonably concluded there was a lack of objective findings in Dr. Cleveland's treatment notes to support Dr. Cleveland's highly restrictive assessment of Plaintiff's RFC and the ALJ gave good reasons for giving no probative value to the assessment completed by Dr. Cleveland.

With respect to the consulting physical examination of Dr. Konrad, the ALJ accurately summarized Dr. Konrad's findings and noted that Dr. Konrad's assessment placed no restrictions on Plaintiff's physical RFC except for postural limitations which restricted her to occasionally climbing, stooping, kneeling, balancing, crouching, and crawling. Plaintiff asserts the ALJ failed

17

to explain his "apparent" rejection of the postural limitations opined by Dr. Konrad [Doc. 8 at 15], but the ALJ did not explicitly state that he rejected the postural limitations opined by Dr. Konrad in making his findings as to the Plaintiff's RFC. Rather, the ALJ summarized the postural limitations opined by Dr. Konrad in his decision and found Plaintiff retained the RFC for a full range of medium work. The Commissioner asserts the ALJ did not reject the postural limitations set forth by Dr. Konrad when the ALJ made his finding as to the Plaintiff's RFC [Doc. 19 at 8]. However, as noted, the ALJ found Plaintiff had the RFC for a full range of medium work. The regulations define medium work as "work involv[ing] lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c), 416.967(c). In this instance, in order for the ALJ to have concluded the Plaintiff had the RFC for a full range of medium work, the ALJ must have rejected the postural limitations set forth in Dr. Konrad's assessment. Assuming merely for the sake of argument, however, that the ALJ did not reject the postural limitations opined by Dr. Konrad, the ALJ's finding that Plaintiff retained the RFC for a *full* range of medium work is error. However, because the postural limitations opined by Dr. Konrad even if accepted by the ALJ would not preclude the Plaintiff from performing the full range of light and sedentary work, the ALJ's finding Plaintiff retained the RFC for the full range of medium work would be harmless error as a RFC for the full range of light and sedentary work would, as found by the ALJ, permit Plaintiff to perform her past relevant work as a receptionist.

Social Security Ruling ("SSR") 83-10, 1983 WL 31251 (1983), discusses medium, light and sedentary work. With regard to medium work, SSR 83-10 states:

> The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour

18

workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms. The considerable lifting required for the full range of medium work usually requires ***frequent*** bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.) Flexibility of the knees as well as the torso is important for this activity. (Crouching is bending both the legs and spine in order to bend the body downward and forward.)

*Id.* at *6 (emphasis added). With regard to light and sedentary work, SSR 83-10 states:

1. *Sedentary work*. The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

2. *Light work*. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater

19

exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

*Id.* at *5-6 (emphasis in original).

In addition SSR 85-15, 1985 WL 56857 (1985), which discusses postural impairments in the context of the use of the medical-vocational guidelines, the "Grids," states, in pertinent part:

*Stooping, kneeling, crouching, and crawling* are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. However, because of the lifting required for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base. This is also true for crouching (bending the body downward and forward by bending both the legs and spine). However, crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).

*Id.* at *7 (emphasis in original). Finally, SSR 96-9P, 1996 WL 374185 (1996), which discusses

20

whether an individual retains the RFC for a full range of sedentary work or less than a full range of

sedentary work, states in pertinent part:

> Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. . . .
>
> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work.

*Id.* at *7-8.

Thus, if the postural limitations opined by Dr. Konrad were accepted by the ALJ, Plaintiff

would have the RFC for less than a full range of medium work, but would have the RFC for a full

range of light and sedentary work. As is discussed more fully below, a vocational assessment from

the state agency which states that Plaintiff's past relevant work as a receptionist was sedentary work

appears in the record (Tr. 112-13). Thus, even if the ALJ erred in concluding Plaintiff retained the

RFC for the full range of medium work, such error is harmless as Plaintiff did retain the RFC to

perform her past relevant work.

### *Psychological (Mental) Impairments*

"Psychological problems are non-exertional impairments which must be included in the

[Commissioner's] evaluation of a [Plaintiff's] limitations." *Walker v. Bowen*, 834 F.2d 635, 642

(7th Cir. 1987). "The determination of mental RFC is crucial to the evaluation of an individual's

capacity to engage in substantial gainful work activity." *Washington v. Shalala*, 37 F.3d 1437, 1440

(10th Cir. 1994) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)).  An alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

With regard to Plaintiff's alleged mental impairment, the ALJ considered the psychological evaluation performed by Mr. Stair/Dr. Stanley and found that their diagnoses and assessments were entitled to little weight because they were unsupported by the generally unremarkable mental status observations made during the evaluation.  The ALJ did note, however, that such essentially normal objective observations made during the psychological evaluation were probative evidence of the absence of a severe mental impairment.

Similarly, with respect to Dr. Lawhon's consulting psychological evaluation the ALJ found that in light of Dr. Lawhon's objective mental status observations – which were unremarkable except for a finding that Plaintiff's mood and affect appeared depressed – combined with the presence of objective test results which suggested exaggeration and/or malingering on the part of Plaintiff, Dr. Lawhon's assessment was of little probative value.  As with Dr. Stanley's test result, the ALJ concluded the virtually normal objective observations combined with some objective test results which, at the very least, suggested exaggeration and/or malingering were probative evidence of the absence of a severe mental impairment.

Integral to the ALJ's findings concerning the severity of the Plaintiff's mental impairment, and also integral to his finding as to the limitations to her physical RFC imposed by her severe impairment, is the ALJ's credibility finding; namely, that Plaintiff's subjective complaints and testimony regarding the severity of her back impairment, limitations and pain, particularly, her

22

subjective complaints as to the presence of precipitating or aggravating factor of such severity as to preclude Plaintiff from engaging in the full range of medium work were not credible (Tr. 20-21). Plaintiff has not challenged the ALJ's credibility finding and, thus, has waived review of that issue. *Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 884 (6th Cir. 2003).

Plaintiff also contends the ALJ failed to consider her testimony and the supporting evidence from the Speech, Hearing & Learning Center concerning her learning disability. The ALJ did, however, explicitly consider the aforementioned report, which is dated May 25, 1993, and reasonably found it "to be too remote in time to be probative of the claimant's condition in regard to her alleged onset date of April 20, 2003 . . . ." (Tr. 19).

*Past Relevant Work*

Plaintiff also asserts the ALJ failed to properly consider her past relevant work [Doc. 8 at 17]. She asserts that although the ALJ found she retained the RFC to perform her past relevant work as a receptionist because she retained the RFC for a full range of medium work, the ALJ offered no discussion regarding the requirements of her past relevant work [*id.*].

A vocational assessment from the state agency appears in the record (Tr. 112-13). The assessment applies to the occupation receptionist, Dictionary of Occupational Titles ("DOT") 237.367.038, specific vocational preparation ("SVP") of four, strength code "S" or sedentary (Tr. 112). The assessment also indicated Plaintiff is capable of performing the receptionist position as it is described in the DOT (Tr. 113). As the vocational assessment described Plaintiff's past relevant work as a receptionist as sedentary work – it clearly fell within the Plaintiff's residual RFC as found by the ALJ.

Finally, as noted, Plaintiff asserts the Commissioner's decision is not supported by

substantial evidence in the record. Having discussed the specific assertions of error made by Plaintiff in detail and having found them to be without merit, I **CONCLUDE** the decision of the Commissioner is supported by substantial evidence in the record.

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[1]:

(1)    Plaintiff's motion for summary judgment [Doc. 7] be **DENIED**;

(2)    Defendant's motion for summary judgment [Doc. 18] be **GRANTED**;

(3)    Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **AFFIRMING** the Commissioner's decision which denied benefits to the Plaintiff; and

(4)    This action be **DISMISSED**.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

24